UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ISMAEL SANCHEZ ROMAN,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Respondents. | Case No. 2:25-cv-01684-RFB-EJY<br><br>**ORDER** |

Pending before the Court is Petitioner Ismael Sanchez Roman's Motion for a Temporary Restraining Order or Preliminary Injunction (ECF No. 5). For the following reasons, the Court grants the Motion for Preliminary Injunction.

**I.   INTRODUCTION**

This case presents a challenge to the Government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection during the pendency of their removal proceedings. The instant Petition is one of a growing number of like challenges in this District and across the country. A putative class action challenging the policy is currently pending before this Court. See Maldonado Vazquez v. Feeley, Case No. 2:25-cv-01542-RFB-EJY. The challenged policy subjects millions of noncitizens to mandatory prolonged detention without the opportunity for release on bond, no matter how long they have resided within the country. The policy arises from the recent decision by the Department of Homeland Security (DHS) and the Department of Justice (DOJ) to significantly alter its interpretation of the Government's detention authority during the pendency of removal proceedings under the Immigration and Nationality Act (INA). Specifically, the policy is based on the Government's

1  contention that 8 U.S.C. § 1225(b)(2) subjects all noncitizens present in the U.S. who are
2  charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as having entered the country
3  without inspection to mandatory detention, rather than the discretionary detention scheme under
4  8 U.S.C. § 1226(a), which provides the opportunity for release on bond and an individualized
5  custody redetermination hearing (*i.e.*, bond hearing) before an immigration judge.

6  On September 5, 2025, the Bureau of Immigration Appeals (BIA) signaled that it has
7  adopted DHS' interpretation of the INA as mandating detention without bond for millions of
8  noncitizens who reside in the U.S. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).
9  The BIA's decision held that immigration judges lack jurisdiction to hold bond hearings or grant
10 bond to all individuals charged with entering the country without inspection. Id. In Maldonado
11 Vazquez, this Court conducted statutory analysis of the relevant provisions of the INA, 8 U.S.C
12 §§ 1225(b)(2) and 1226(a), and found that the Government and BIA's interpretation of the §
13 1225(b)(2) is both contrary to the plain meaning of the statutory text, legislative history, and
14 decades of agency practice, and raises serious constitutional concerns under the Due Process
15 clause of the Fifth Amendment. See Case No. 2:25-cv-01542-RFB-EJY, ECF No. 30 at *20-28
16 (D. Nev. Sept. 9, 2025). Accordingly, the Court found the petitioner Maldonado Vazquez, a U.S.
17 resident for more than twenty years, was likely to succeed in establishing that § 1226(a) applied
18 to him and other similarly situated noncitizens, and granted him a preliminary injunction,
19 enjoining the federal respondents from denying his release from detention on bond on the basis
20 that he is subject to mandatory detention under § 1225(b)(2). Id. at * 20-41.

21 Petitioner Sanchez Roman, who first came to this country at the age of 13 and has resided
22 in the U.S. for over thirty years, is similarly situated to petitioner Maldonado Vazquez, and
23 Respondents' detention of him under 8. U.S. C § 1225(b)(2) is unlawful for the same reasons. As
24 such, the Court's analysis regarding Maldonado Vazquez's entitlement to a preliminary
25 injunction, which the Court fully incorporates by reference herein, applies with equal force to
26 Petitioner Sanchez Roman's instant Motion for preliminary relief. Because, for the reasons set
27 forth in this Court's decision in Maldonado Vazquez, the Court finds Petitioner will likely
28 succeed in establishing that the Government's authority to detain him arises from 8 U.S.C. §

1226(a), not § 1225(b)(2), and that he is thus entitled to a bond hearing, his continued detention without one is likely unconstitutional, is causing immediate and irreparable harm, and is contrary to the public interest. The Court therefore grants Petitioner's Motion and enjoins Respondents from continuing to deprive him of the opportunity for release on bond on the basis that he is subject to mandatory detention under § 1225(b)(2).

## II.   PROCEDURAL HISTORY

On September 8, 2025, Petitioner filed his Verified Petition for Writ of Habeas Corpus pursuant to 18 U.S.C. § 2241. ECF No. 1. The same day, Petitioner filed a Motion for Temporary Restraining Order. ECF No. 3. On September 9, 2025, Judge Navarro conducted a preliminary review of the Petition, directed service on Respondents, set a briefing schedule, and denied Petitioner's Motion for TRO without prejudice, for failure to satisfy the requirements of Rule 65 regarding an *ex parte* TRO. Id.

On September 12, 2025, Petitioner filed the instant Motion for TRO or preliminary injunction, clarifying that he is not seeking *ex parte* relief. ECF No. 5. The same day Respondents counsel appeared in the case. ECF No. 6. On September 18, 2025, pursuant to Local Rule 42-1 and Federal Rule of Civil Procedure 42(a), this case was transferred to the undersigned Judge based on the common questions of fact and law raised in the instant Petition and in Maldonado Vazquez v. Feeley, Case No. 2:25-cv-01542-RFB-EJY. ECF No. 7-8.

On September 21, 2025, Respondents filed their Opposition to the Motion for TRO. ECF Nos. 10-11. On September 22, 2025, the Court held a hearing on the Motion and issued its order granting the Motion from the bench, with the instant written Order to follow.

## III.   BACKGROUND

The Court fully incorporates by reference the statutory and regulatory background relevant to the Government's challenged mandatory detention policy set forth in the ruling in Maldonado Vazquez. See Maldonado Vazquez, Case No. 2:25-cv-01542-RFB-EJY, ECF No. 30 at *6-11 (D. Nev. Sept. 9, 2025). The key factual and procedural distinction in this case is that

1  Mr. Maldonado Vazquez requested and was granted a bond hearing and release on bond by a Las
2  Vegas IJ before the BIA's September 9th decision in <u>Matter of Yajure Hurtado</u>, 29 I&N Dec.
3  216 (BIA 2025). When the Court granted a preliminary injunction, Mr. Maldonado Vazquez
4  remained in ICE detention based on the same detention policy that Petitioner Sanchez Roman
5  challenges in this case, however, in <u>Maldonado Vazquez</u> DHS continued to detain him pursuant
6  to an automatic stay of the IJ's bond release order pending its appeal to the BIA, under 8 C.F.R.
7  § 1003.19(i)(1). In contrast, Petitioner Sanchez Roman did not seek a custody redetermination
8  (*i.e.* bond hearing) prior to the BIA's ruling, which adopted DHS' reading of the INA and held
9  IJs have no jurisdiction to hold a bond hearing for detained noncitizens like Mr. Maldonado
10  Vazquez and Mr. Sanchez Roman. Accordingly, the automatic stay under 8 C.F.R. §
11  1003.19(i)(1) is not at issue here, and the habeas relief requested is different.

12  Rather than ordering Petitioner's release on bond, as the Court did in <u>Maldonado
13  Vazquez</u>, the Court here orders Respondents to provide Petitioner a bond hearing, wherein an IJ
14  may or may not find Petitioner should be released on bond based on the evidence of Petitioner's
15  individual circumstances and whether he presents a flight risk or danger to national security or
16  the community. <u>See</u> <u>Matter of Guerra</u>, 24 I&N Dec. 37, 40 (BIA 2006) (in a custody
17  redetermination hearing, a noncitizen must establish to the satisfaction of the IJ that he or she
18  does not present a danger to others, a threat to the national security, or a flight risk, to obtain
19  release on bond). Findings of fact relevant to Petitioner's individual circumstances for the
20  purpose of this Motion are set forth below.

21  Petitioner Sanchez Roman is a 47-year-old man who works as a roofing contractor, with
22  over 20 years of experience and his own roofing business. He resides with his wife, a U.S.
23  citizen who suffers from lupus, and his stepdaughter, a 22-year-old U.S. citizen with
24  schizophrenia. He is the primary breadwinner and an active caregiver for both family members.
25  He also has four U.S. citizen children with his late wife, who passed away in 2021 due to
26  COVID-19 related complications.

27  Petitioner has lived in the U.S. since 1991, when he entered without inspection at the age
28  of thirteen. In 1996-1997, Petitioner pled guilty to several driving related infractions and

1    misdemeanors, and in 1998 Petitioner was charged with a misdemeanor for driving under the
2    influence. In September of 2000, he accepted voluntary departure to Mexico, and later returned
3    to the U.S. after entering without inspection. In 2002 his DUI charge was dismissed for
4    inactivity. He has resided in Gooding, Idaho for the last 25 years.

5    From December 2024 to July 2025, Petitioner was subject to multiple criminal
6    proceedings, some of which resulted in a misdemeanor conviction, sentencing, and probation.
7    After being arrested and charged in July 2025 with possession of a controlled substance and use
8    or possession with intent to use drug paraphernalia, he was released pending the outcome of the
9    charges on July 21, 2025. Immediately following his release, ICE arrested and transferred
10   Petitioner to ICE custody, where he is currently detained at the Nevada Southern Detention
11   Center (NSDC) in Pahrump, Nevada. ICE charged Petitioner with being inadmissible under 8
12   U.S.C. § 1182(a)(6)(A)(i) as having entered the U.S. without inspection and commenced
13   removal proceedings before the Las Vegas Immigration Court pursuant to 8 U.S.C. § 1229a.

14   Petitioner has attended several master calendar hearings before Las Vegas IJ Glen R.
15   Baker, who provided Petitioner additional time to find counsel. The removal proceedings are
16   ongoing. He is eligible to apply for Cancellation of Removal under 8 U.S.C. § 1229b because he
17   has been present in the United States for more than 10 years and his wife would suffer
18   exceptional and extremely unusual hardship if he were deported. If his application is successful,
19   Petitioner will become a lawful permanent resident. Additionally, in August 2025, Petitioner's
20   wife filed an I-130 Petition for Alien Relative on his behalf, which is currently pending.

21   Due to the BIA's decision in Hurtado, 29 I&N 216 (BIA 2025), which adopted DHS'
22   interpretation of the INA and held IJs lack jurisdiction under 8 U.S.C. § 1226(a) to consider bond
23   for individuals who entered the U.S. without inspection, Petitioner cannot seek a bond hearing by
24   an IJ. Accordingly, absent Court intervention, he faces indefinite detention during the pendency
25   of his removal proceedings, without the opportunity for release on bond.

26   Petitioner's wife and stepdaughter are facing extraordinary hardship due to his prolonged
27   detention, above and beyond the loss that is always attendant to the incarceration of a family
28   member. Because he is unable to work, they are deprived of their primary source of income. And

Petitioner's wife, who suffers from lupus, is significantly limited in her ability to maintain day-to-day activity without support from Petitioner. Further, because his wife is now forced to work to make up for the lost income, she is facing increased health issues due to the stress on her body. Simultaneously, Petitioner's stepdaughter's mental health is worsening every day due to the separation from her father figure. She struggles to sleep more than a few hours every night and continuously asks when Petitioner will return home.

### IV.   LEGAL STANDARDS

#### A.   Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

In the Ninth Circuit, a preliminary injunction may also issue under the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

///

**B. 28 U.S.C. § 2441 Petition for Writ of Habeas Corpus**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003).

**V.   DISCUSSION**

Respondents' arguments in opposition are largely identical to those the Court addressed and rejected in Maldonado Vazquez: Respondents argue (1) the Court lacks jurisdiction over the Petition under 8 U.S.C. § 1252; (2) even assuming jurisdiction, Petitioner is unlikely to succeed on the merits because all noncitizens who entered the U.S. without inspection are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2); (3) Petitioner is not facing irreparable harm by suffering harms inherent in detention; (4) and the Government has a compelling interest in the "steady enforcement of its immigration laws," and the BIA has an institutional interest in its administrative agency authority and judicial intervention would disturb that authority and "disrupt the *status quo*." See ECF No. 11-1 at 6-11. The Court fully incorporates its discussion and rejection of these arguments regarding jurisdiction and the Winter factors in Maldonado Vazquez, with several relevant distinctions discussed below. Case No. 2:25-cv-01542-RFB-EJY, ECF No. 30 at *12-29; 38-40.

///

### A. Jurisdiction

The Court incorporates by reference its discussion of jurisdiction in Maldonado Vazquez. Id. at *12-15. The Court simply adds that 8 U.S.C. § 1252(a)(5), which was not raised by the respondents in Maldonado Vazquez and thus not discussed in detail in the Court's Order, does not deprive this Court of jurisdiction over Petitioner's challenge. It is well settled in the Ninth Circuit that § 1252(a)(5) only strips a district court of habeas jurisdiction where a petitioner seeks judicial review of a final order of removal. See Singh v. Gonzales, 499 F.3d 969, 977-78 (9th Cir. 2007) (citing Puri v. Gonzales, 464 F.3d 1038, 1041 (9th Cir.2006) (holding that "the REAL ID Act's jurisdiction-stripping provisions ... does [sic] not apply [if the] claim is *not a direct challenge to an order of removal* ") (emphasis added). Because there is no final order of removal issued as to Petitioner, and Petitioner does not challenge any order of removal, § 1252 does not strip this Court of jurisdiction over his challenge to the lawfulness of his detention under the INA.

### B. Administrative Exhaustion

The Court notes that Respondents do not argue the Court should require administrative exhaustion as they did in Maldonado Vazquez. Instead, they argue that "Petitioner has not established irreparable harm because he has an adequate remedy in requesting review from the appeals court." ECF No. 11-1 at 16. To the extent Respondents argue Petitioner should be required to request a custody redetermination hearing before an IJ pursuant to 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d), before seeking habeas relief, the Court finds such administrative exhaustion would be futile without the Court's intervention, due to the BIA's decision in Hurtado, 29 I. & N. Dec. 216, 228 (BIA 2025). See Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") As Respondents state, BIA decisions are binding on immigration judges, and Hurtado thus precludes an IJ from finding jurisdiction over noncitizens like Petitioner to hold a custody redetermination hearing. Therefore, judicial intervention enjoining Respondents from preventing Petitioner from having a bond

hearing pursuant to the holding in Hurtado is necessary to enable Petitioner to avail himself of his administrative remedies.

### C. Balance of the Equities and Public Interest

In Maldonado Vazquez, the Court's analysis regarding these factors rested in part on the fact that Mr. Maldonado Vazquez had established at a bond hearing to the satisfaction of an IJ that he was neither a flight risk nor danger to the community, such that the Government's interest in his continued detention was minimal. See Case No. 2:25-cv-01542-RFB-EJY, ECF No. 30 at *39-40. Here the Court simply finds that to the extent Petitioner poses such a risk that Mr. Maldonado Vazquez does not, the Government's interest is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Petitioner is warranted to an IJ. The Court simply enjoins Respondents from asserting Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the relevant statutory provisions of the INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024).

In all other respects, the Court finds the Winter factors tip sharply in favor of Petitioner for the same reasons set forth by this Court in Maldonado Vazquez. Case No. 2:25-cv-01542-RFB-EJY, ECF No. 30 at *12-29; 38-40.

### D. Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition pursuant to § 2254. See Brown v. Davenport, 596 U.S. 118, 127-28 (2022)

The Court finds that the specific harm Petitioner suffered—that he is being unlawfully detained without a bond hearing—is remedied by granting his request for a bond hearing under 8

1  U.S.C. § 1226(a) within seven days and enjoining Defendants from denying bond on the basis
2  that he is detained under § 1225(b)(2). The Court sets a seven-day deadline because it finds
3  Petitioner has been unlawfully detained under § 1225 without a bond hearing, and the procedural
4  due process protections embedded in the right to a bond hearing, for two months. Given
5  Petitioner's liberty interest is at stake, the Court finds that if a bond hearing is not provided
6  promptly, no later than September 29, 2025, within seven days of the Court's Order at the
7  hearing granting the preliminary injunction, Petitioner's continued detention would violate his
8  due process rights.

9  Therefore, the Court, in its equitable discretion in fashioning appropriate § 2254 habeas
10  relief, further orders Respondents to immediately release Petitioner if a bond hearing is not
11  provided by September 29, 2025, unless and until it is determined that he should be detained
12  pursuant to the standard set forth in 8 U.S.C. § 1226. See e.g., Lopez-Campos v. Raycraft, No.
13  2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (ordering immediate release or a
14  bond hearing within seven days); Velasquez Salazar v. Dedos, No. 25-cv-835, 2025 WL
15  2676729, at *9 (D.N.M. Sept. 17, 2025) (ordering a bond hearing or release within seven days);
16  Salazar v. Dedos et al, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17,
17  2025) (ordering similar relief); Kostak v. Trump, No. CV 3:25-1093, 2025 WL 2472136 (W.D.
18  La. Aug. 27, 2025) (same).

19  **E. Security**

20  Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction
21  . . . only if the movant gives security in an amount that the court considers proper to pay the costs
22  and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.
23  R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district
24  court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572
25  F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In
26  particular, 'the district court may dispense with the filing of a bond when it concludes there is no
27  realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation
28  modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that providing

Petitioner a bond hearing under 8 U.S.C. § 1226(a) will be costly. Therefore, the Court declines to set bond.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Preliminary Injunction (ECF No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the Court's Order granting the preliminary injunction from the bench, no later than September 29, 2025.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by Monday, September 29, 2025, Petitioner shall be released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by October 3, 2025. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**DATED:** September 23, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**